Case No. 21-2668 Gary Anderson v. Alexis Holmes, et al. Oral argument not to exceed 15 minutes per side. Mr. Teague, you may proceed for the appellants. Thank you. Good morning to the panel. My name is Benjamin Teague. I'm representing the appellants in this case. Five minutes for rebuttal. Very well. Of the claims remaining on this appeal, they fall into two broad categories. The first being those claims that revolve around the probable cause that existed in this case, and the other group being the claims related to handcuffing and Mr. Anderson's failure to produce evidence in response to that on this, in response to summary judgment in this case. Turning to those first group of claims relating to probable cause, there was probable cause here in this case to arrest Mr. Anderson. Looking at... And so, I mean, what's the import of probable cause in this appeal? Your Honor, for probable cause in this appeal, there's claims remaining. He has a First Amendment retaliation claim, and he also has a Fourth Amendment seizure claim. So in looking at this qualified immunity appeal, if there's probable cause to arrest him, that would defeat those two claims. And it would defeat them why? Well, if there's probable cause to arrest someone, then it was not an unconstitutional seizure of that person. Okay. There wouldn't be a constitutional violation, and then qualified immunity would apply to bar this suit. The same goes... That makes sense. I mean, your brief, you say that the absence of probable cause is an element of the claims, which really goes to whether the plaintiff had presented evidence creating a genuine issue as to each element of the claim, which is a Rule 56 issue as opposed to a qualified immunity issue. Is that an unfair reading of your brief, do you think? Your Honor, looking at this appeal and the issues here, it's a qualified immunity appeal. Part of that is that the plaintiff's burden to show that there was a constitutional violation, and also specifically looking for the First Amendment retaliation claim and the Supreme Court's decision in Nieves v. Bartlett, that is a no probable cause rule case, applying that for First Amendment retaliation claims. So in that, it's our argument that he needs to overcome that. It's the plaintiff's burden there. But the existence of probable cause here, the probable cause to seize him, that extinguishes what would have been his claims for the Fourth Amendment seizure and his First Amendment retaliation claim. Let me ask you this, Mr. Tate. Do you concede for the purpose of this appeal, Anderson's versions of the facts? Your Honor, in this appeal, it's a qualified immunity appeal, and we have to look at the facts in a light most favorable to Mr. Anderson. I understand that he filed his affidavit in response to his motion for summary judgment. So I understand that I'm not here to dispute the facts on this qualified immunity appeal, looking at applying the law to these facts. So in that sense, yes, we're looking at the facts in a light most favorable to him. All right. Well, if that's so, if you look at his version of the facts, he says he didn't create any disturbance. That is in his affidavit. Based on the law, the Michigan statute, and Michigan Courts of Appeals interpreting that statute, an interruption of peace and quiet is a disturbance under that statute. So it's admitted by Anderson that he got up without, you know, drew the attention, so that's an interruption of peace and quiet and a public building. Well, he was recognized, there was a response to his question, and then he left, walked out. I mean, what case do you have that says that is a disturbance within the Michigan statute just because you voice an opinion in a public meeting? Well, Your Honor, as stated by Anderson, he interrupted the presentation, he was eventually recognized, but he drew the attention to himself to get up, draw the attention, eventually was recognized, made his loud and profane remark, and immediately left. This statute hasn't had a ton of interpretation by the courts. One in particular, a recent decision from this circuit, the Smith case, looking at that was whispers and then a disturbance in the audience of a meeting. And in that, the court held that, yes, there was probable cause to arrest. So looking at Smith v. Walters, similar to this case in that it was a disturbance in the audience of the meeting, Anderson getting up and making that loud and profane remark, it completely admitted by him in that regard, that's probable cause based on what the officer saw. And it's clearing that low bar of probable cause because those are facts showing that he interrupted the peace and quiet based under this statute, based under the law. Well, I hear you say interrupted peace and quiet, but this was just debate. I mean, it was a question and answer period about the school shootings. I guess I'm puzzled with your absence of citing any case that says that's enough to be a violation of a statute. Well, Your Honor, I would disagree that it was a question and answer period in a debate. In Anderson's remarks and his deposition and his affidavit, he never claimed that this was a question and answer period. He said, I got up and drew the attention to myself so that they would recognize me. This wasn't a back and forth between the panel and Anderson. He got up and drew that attention to himself. This is unlike, say, Leonard V. Robinson, where that was a chaired public assembly, where it was a recognized speaker going back and forth with the chair. This was a presentation to faculty, faculty only event, not open to the public. They were doing ID checks at the door for people. In the middle of the presentation, Anderson gets up and makes that remark himself. He never claimed that they asked for any questions. He never claimed that other people were asking questions, too. So I also did so. It was just I got up and drew that attention to myself so that they would recognize me. Then he made his loud and profane remark, thus interrupting the peace and quiet in the public building. Well, there was a response to his question, wasn't there? There was a response, Your Honor. But still, based on the witness statements that it caused everyone to turn around and look at him, that's similar to the Smith v. Walters case. But just as, Your Honor, if we were in the courthouse in Cincinnati and someone in the audience got up, drew attention to themselves, made a loud and profane remark, they may have gotten a response from the panel for having done so. That doesn't mean that it still wasn't a disturbance. In here, this was a disturbance by him getting up and making that loud and profane remark. But that disturbance also wasn't the only source of probable cause for his immediately leaving and then refusing to respond and identify himself to the officers that were investigating what happened in the auditorium. I mean, you know, what country are we talking about here? I mean, you know, number one, I mean, I thought there's a Michigan Supreme Court case or Michigan Court of Appeals case says you can that construed this statute not to criminalize expressing opinions that might, you know, cause a flutter among the audience. I can set that to one side. But I thought that he didn't have to provide his papers, so to speak, unless the officers already had reasonable suspicion to think he had violated some statute. So isn't this argument derivative of your prior one? Well, Your Honor, there are two separate statutes. There's the first statute with the there was a disturbance in the auditorium. They wanted to go and investigate and talk to Anderson. So he readily admits that he's leaving. He does not stop and identify himself to officers who are in uniform. Why does he have to identify himself? He already did coming in, as you point out. What legal obligation does he have at this point to, you know, identify himself? Meanwhile, he says that they gave him the option to just leave, either show your ID or leave. So I guess why don't you speak to both of those questions? Sure. To both of those, Your Honor. First, the authority for identifying himself comes from the Michigan Compiled Law 750.81d that criminalizes obstructing a police officer. Right. But you need to have some reasonable suspicion, don't you, that the person is doing something wrong. I mean, you can't have an officer here in Michigan on the sidewalk in everyone who comes down just as a dragnet to try to pick up somebody that he thinks shouldn't be on the streets or something. Of course not, Your Honor. Here, it's what happened in the auditorium, his leaving the auditorium, officers telling him to follow up on that disturbance in the auditorium. So if there was not probable cause or reasonable suspicion based on the events in the auditorium to think that he had violated some Michigan law, then he doesn't have to provide his identification. Is that accurate? Yes, that would be accurate. Okay. I appreciate it. So based on that, that follows up into, and I would also point to the court's recent decision in Barrera looking at a failure to identify oneself being probable cause under the same statute for meaning probable cause to arrest someone. Turning very briefly to the handcuffing claims, Your Honors, the issue there is that this circuit requires that more than a plaintiff's subjective feelings of pain and more than the plaintiff's subjecting feelings of numbness and in response to defendant's motion for summary disposition, summary judgment, excuse me, Anderson only provided his own subjective feelings of pain. He did not provide any of the medical records that he spoke of in his deposition and his affidavit. And that's just not enough when it's the plaintiff's responsibility to put up evidence in response to summary judgment. That's not enough for him to overcome summary judgment. Okay. Well, I guess one thing you can think about and respond to if you wish in your rebuttal time is why isn't that just a pure Rule 56 issue? So you don't have to answer now because you've got a lot of rebuttal time. Any other questions from the other judges? All right. Very well. We'll hear from Mr. Kuhn. Thank you, Your Honor. And fortunately, my internet has been going in and out, but hopefully there will not be a problem here during this 15-minute period. Again, I appreciate Tom Kuhn on behalf of Mr. Anderson. Appreciate the privilege of arguing this case involving a basic color of our Constitution, the First Amendment, before such a distinguished panel today. I assume you guys have questions and so on. One of them, I just wonder, how do you distinguish the Smith v. Walters case that's relied upon by your adversary? Well, Smith v. Walters, and again, you know, Judge Sutton or Judge Rogers in that case said, hey, we're not looking at what the person said to the counsel. We're not even looking at the fact that the person comes back in. It had to do with a disturbance in the back of the room that had nothing to do with the speech. This has everything to do with the speech. And so, yes, that's how I would distinguish that case. Mr. Kuhn, do you want to speak to Mr. Teague's argument that the Michigan statute is about disturbances and so on is broad enough to say that, you know, even on your view, even on the view of the facts favorable to your client here, that there was a violation of this act when he said what he said? Well, you know, I'm pretty old, and I've been at a lot of these presentations. You know, I'm a former trustee of the Oakland County Community College for 12 years. These auditoriums are, you know, they're forums for expression of ideas. And when someone is in the audience, it happens all the time. I can't tell you the number of presentations I've been at where someone either raises their hand or they stand up and raise their hand and they're the presenters or the presenters say, hey, wait till the end of this and we'll get your question then or come up to us afterward. This is not a disturbance. This is just common practice. It happens. I mean, there may be some of these presentations where it doesn't happen. But to me, it's happened almost every single time you have a presentation. If it's interesting enough, someone's going to raise their hand and ask a question. And, you know, Judge Boggs, when he wrote the opinion in Leonard B. Robinson, you know, he said it's unconstitutional where a person merely advocated an idea. Okay. Using this statute, this very statute, MCL 750.170, it's unconstitutional when a person is merely advocating an idea. And he went on to say no police officer would believe that mild profanity while peacefully advocating a political position could constitute a criminal act. To me, you know, the Supreme Court doesn't require the identical case. But this gives very fair notice to any police officer that they're not to use this disturbing statute to prosecute or criminalize a question at a forum. Judge Larson, do you have a question? I mean, you don't think that he could gain attention to himself by any means in this forum, though, right? Like, I mean, your point is, yeah, maybe he should have sat there and raised his hand. He didn't do that. Instead, he stood up and he drew attention to himself. But that's still within the bounds. But there are things that he could do that maybe would not be okay, right? Like to get attention, he can't start, like, I don't know, throwing rocks at the podium or something like that. You know, acknowledge me, acknowledge me. Is that right? But your point is, it's closer to just raising my hand. Exactly. And again, even in these kind of presentations, it often happens because, you know, there are big auditoriums, people at the front don't always see you. I've seen it many, many times, someone stands up and raises their hand. And as a public official, I've been a public official almost 30 years, elected public official here in Michigan. And we have had situations where someone's in the back of the room, yelling and screaming and swearing. Yeah, that's not the same thing here. You know, it is not the same thing. How about on the handcuffing claim? So, Mr. Teague says that the law requires more than subjective expressions of pain or subjective beliefs, and that your clients didn't put forward sufficient evidence to meet that legal standard. What do you say to that? Well, again, you know, he testified. He testified that he saw his primary care physician, Dr. Grewal. And then he went through a period of physical therapy. I mean, he's talking about a real injury. And even to this day, he has problems with his grip and his strength in his hands. So, I think that, you know, the precedent here, whether it's Morrison versus Board of Trustees or Oliver B. Smith, says that's adequate to create an issue of fact on this issue. And the district judge agreed with that. Can we second guess that question, even if we thought the district judge was wrong about that? Is that for us to decide? Or do we lack jurisdiction over that? Because it's just a question about whether the evidence is sufficient to get to a jury on that claim. You know, it seems to me, honestly, that Judge Friedman looked at the evidence and the facts in the light most favorable to plaintiff. He did a fair, he did an objective analysis of that. And, you know, it often happens here. And I mean, you know, defense counsel has mentioned loudly profaned six times, he mentioned it 10 times in 11 pages of his reply brief. We're not talking about a different factual situation here. Accepting the facts in the light most favorable to plaintiff, then it's a legal issue. And whether he has jurisdiction, I mean, we question that in our brief. Are there any other questions that I can answer at this time? No, sir. Okay. Well, again, I appreciate the opportunity to speak to this panel. Thank you, Mr. Coon. Mr. Teague, your rebuttal. Yes, Your Honor. Thank you. Judge Cuthled, responding first to your question that was regarding the subjective assessment of his pain and the handcuffing claims. Yeah. But this is, this is a legal issue, looking at whether he's satisfying his burden to create a question of material fact, his burden of production of showing that there was a constitutional issue. You know, I understand that. It's a, you know, it's summary judgment motions present a legal issue for the court. But we don't have interlocked, we don't have jurisdiction to hear interlocutory appeals of summary judgment issues. We only have, you have this special defense that, if applicable, protects your client from having to go to trial. And it's only that defense that we have jurisdiction to hear Rule 56 arguments. And your argument on this point seems like a straight up Rule 56 argument, unless I'm missing something. Your Honor, I disagree there in that this is an appeal of a qualified immunity issue, which the court does have jurisdiction to hear. One element of that is the plaintiff's burden to show that there was a constitutional violation. As part of that, in the elements to show a handcuffing claim, one of those elements is that there was a physical injury. That's the third element. The other elements aren't really at issue. The element of whether there was a physical injury to him is at issue. And without showing a constitutional violation, qualified immunity would apply. So what happened here? In this testimony, though, enough to establish physical injury, I mean, just take, he can say what happened to him and how his wrist felt and what treatments he had to have. No, Your Honor. Based on... I mean, don't we have to take that into account for the purpose of this appeal? No, Your Honor. In looking at whether he's satisfied the elements of that claim from this circuit's decision, Jackson v. Lubelin, a subjective assessment of that pain and numbness from handcuffing is not enough. And all we have from his affidavit, from his deposition testimony, is his own subjective, I have pain in my hands after the handcuffing. He mentions that he wants that he went to a doctor, that he might have supporting documents. But in response to summary judgment, he did not produce any of those. He did not satisfy and show that there was a constitutional violation by meeting every single element of those handcuffing claims. So based on the precedent in this circuit, that showing of purely only subjective feelings of pain and discomfort and numbness, that's not enough. So he filled his burden there, and that's why qualified immunity would apply to those handcuffing claims. Well, he did seek medical attention, did he not? Yes. As stated in his affidavit and in his deposition, none of those records from any of the stated medical providers were attached to his response to summary disposition. Excuse me, summary judgment. All that was there was based on just his deposition and his affidavit. That's all that was there to try to meet that element. And under precedent, that subjective assessment of pain, that subjective feeling of pain or numbness is not enough. Mr. Tigay, going back to your first argument about probable cause in the Michigan statute, whether there was some disturbance in the auditorium. I mean, it sure seemed to me that you were arguing in your brief that his comments did create some kind of panic, which in turn created probable cause. And then on the other hand, looking at the record, it seems that Mr. Anderson testified that there was no panic. And so I'm a bit hard-pressed to setting aside the interpretation of the Michigan Act. I'm kind of struggling to see how you are not in fact, it seems to me you are disputing the facts. And so I just want to give you a chance to respond to that. No, I understand, Your Honor. And responding to that, in the Smith v. Walters case, the court there also looked at the witness reports from that incident in that case. And from witness reports here, there were descriptions of a panic, descriptions of people turning around and looking at Mr. Anderson. Beyond that, Mr. Anderson saying that there wasn't a disturbance, that would be his testimony as far as a legal conclusion. No, not at all. Not at all. I mean, if he's saying people were not upset, I mean, that's just his perception of what's happening. Understood. But looking at what he admits as far as what happened, that loud profanity, and looking at what a reasonable officer could interpret from the statute, a disturbance of peace and quiet, a disturbance in a public building, that's enough for him to think that he has probable cause to arrest Anderson. So if you swear in public, you can get arrested in this state? Is that the law? Based on- Is you're going to the station house? Is that the way it is here? No, Your Honor. Looking at this statute, where it has the enumerated places and including the disturbance that could happen, a disturbance in a public building, as there were other criminal courts of appeals cases we cited in our brief, that if you have a disturbance in a public building, something to meet that disturbance, which has been vaguely described by the courts and including a disturbance of peace and quiet, looking at the facts and what the law was at the time, that's what officers could do based on what the law was on the books at that time. Okay. Any further questions from the other judges? Very well. Okay. Well, we thank you both for your arguments. The case will be submitted.